```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF MISSOURI
                        SOUTHEASTERN DIVISION
```

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 1:05 CR 20 RWS |
| ) | DDN |
| MARKEITH VALENTINE, ) | |
| ) | |
| Defendant. ) | |

**REPORT AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

This action is before the court upon the pretrial motions of the parties which were referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b). An evidentiary hearing was held on April 8, 2005.

Defendant Valentine has moved to suppress physical evidence and statements (Doc. 26). From the evidence adduced at the hearing, the undersigned makes the following findings of fact and conclusions of law:

### I. FACTS

1. On July 17, 2003, at approximately 5:45 p.m., Richard W. Harrington, the deputy commander of state investigations for the Illinois Department of Corrections,[1] was driving north on Interstate 55 in Perry County, Missouri, on personal business. At that time, he saw a two-vehicle accident occur in the I-55 southbound lanes. He saw that one of the vehicles, a Chevrolet Impala automobile, came to rest along the side of the highway. The other vehicle went off the highway and down a ravine. He made a u-turn to extend aid to the accident victims.

---

[1] On this date and for the previous eleven years Harrington was authorized to make arrests as an Illinois state law enforcement officer. He was also a member of a federal law enforcement task force in Illinois. In the past, he served as a Cape Girardeau, Missouri, police officer. On July 17, 2003, he was not a Missouri state law enforcement officer.

2. Harrington parked his vehicle on the highway shoulder and walked to the Chevrolet to see if the sole occupant, defendant Markeith Valentine, was injured. Sometime before the accident, Valentine had placed a loaded pistol inside the Chevrolet's front seat passenger's side glove compartment. In the collision, the glove compartment burst open and the pistol was thrown out of the compartment.

3. Harrington walked up to Valentine's driver's side door and asked Valentine if he was OK. Valentine said he was not injured and he did not appear to Harrington to be injured. However, Harrington believed he smelled alcohol on Valentine's breath. Harrington did not see a weapon inside the vehicle. Harrington then left Valentine's vehicle and went to check on the vehicle that went down the ravine.

4. After Harrington left, Valentine got out of his vehicle to assess its damage. He saw that the front right wheel had broken and that the Chevrolet could not be driven.

5. When Harrington got to the other vehicle, a nurse had already arrived and told him that he would take care of the occupants. He told Harrington to return to the other vehicle to help the occupant. Harrington returned to Valentine's vehicle.

6. When Harrington returned, the Chevrolet's driver's side door was open and he saw a small pistol laying in the center of the driver's seat.[2] He immediately called to one of the approximately 15 passers-by, Anthony Mergo,[3] who had stopped to aid the accident victims, to witness the pistol where it lay. Harrington identified himself and the passer-by saw the pistol laying on the driver's

---

[2]Valentine testified at the hearing that immediately after the accident he took the pistol from where it had landed after it was thrown from the glove compartment by the force of the collision and placed it in the front seat middle console compartment where it could not be seen without opening the compartment. The undersigned credits the testimony of Harrington that he saw the pistol in plain view laying in the middle of the driver's seat.

[3]Phonetic spelling.

seat.  Then, without Valentine's permission, Harrington entered the Chevrolet, seized the pistol,[4] and removed its ammunition magazine.

    7.    By this time Valentine was standing at the front corner of the Chevrolet.  The witness to the pistol told Harrington that he hoped the driver did not have any other weapon.  From his years of law enforcement experience, Harrington believed there was a substantial risk that the Chevrolet driver had more than one weapon.  He continued to believe that the possession of another firearm by someone whom he believed had been consuming alcohol would pose a danger to all persons at the accident scene.  So Harrington asked Valentine whether he minded if he patted him down for any more weapons.  Valentine responded by stating that he had no other weapon and that Harrington could pat him down.  No other weapon was found.

    8.    Fifteen minutes later, Perry County deputy sheriff Jason Kelly came to the scene and Harrington gave him the pistol.  Soon thereafter, Missouri State Highway Patrol Trooper Michele Coon arrived to investigate the accident.  Deputy Kelly gave her the pistol.  Coon then spoke with Harrington who told her what had transpired, what he had observed.  Coon then confirmed with Mergo that the pistol had been inside the Chevrolet.  Next, Trooper Coon administered field sobriety tests, including the gaze nystagmus test, to Valentine.  From the tests, she determined that Valentine had had alcohol but was not intoxicated.  At some time during her contact with Valentine, Valentine showed her his Florida driver's license.  She asked Valentine where he was from and he answered he was from Florida.

    9.    At that time Trooper Coon placed Valentine under arrest for carrying a concealed weapon in violation of Missouri state law.

---

[4]Harrington seized the pistol out of a concern for the safety of himself and the many persons who had stopped to aid the victims of the accident, because he had smelled alcohol on the breath of the Chevrolet's driver.  Harrington believed the possession of a firearm by someone who had consumed alcohol would pose a danger to all persons in the area.

She orally advised him of his constitutional rights to remain silent and to counsel. She then handcuffed Valentine and placed him in the patrol car. Leaving Valentine in the patrol car, Coon returned to the accident scene to gather information for her accident report. Incident to Valentine's arrest, she searched the Chevrolet.

    10. When her investigation was completed, Trooper Coon drove Valentine approximately ten miles to the Perry County Sheriff's office. While they were en route, Coon asked Valentine why he had the firearm. Valentine said he had been visiting his grandmother in St. Louis and was then returning home to Florida. When she asked him why he had not placed the firearm in the trunk, he said he carried it for protection. Valentine made no other statements.

## II. DISCUSSION
### Seizure of the pistol

The pistol seized from defendant's automobile should not be suppressed. Defendant argues that the seizure of the pistol from the Chevrolet by Richard Harrington was unlawful under the Fourth Amendment, because it was performed by him in a law enforcement capacity but without probable cause.

The restrictions of the Fourth Amendment apply only to searches and seizures that are government actions. Walter v. United States, 447 U.S. 649, 656 (1980); Coolidge v. New Hampshire, 403 U.S. 443, 487 (1971). The issue before the court is whether or not Harrington acted as an instrument or agent of the government when he entered the Chevrolet and seized the pistol. United States v. Jacobsen, 466 U.S. 109, 113 (1984); Coolidge, 403 U.S. at 487.

In this case the evidence is clear that Harrington was outside his territorial jurisdiction for exercising his official authority. Nevertheless, Harrington will be considered to have acted as a government agent, if (1) the government anticipatorily knew of and acquiesced in Harrington's entry into the Chevrolet and seizing the pistol, and (2) Harrington intended to aid law enforcement or to

further his own interests in doing so.  <u>United States v. Malbrough</u>, 922 F.2d 458, 462 (8th Cir. 1990) (citing <u>United States v. Miller</u>, 688 F.2d 652, 657 (9th Cir. 1982).[5]  No evidence indicated that any government official or officer knew or expected that Harrington would enter the automobile and seize the firearm.  And there was no evidence that he did so for any of his own private interests.  Therefore, even though he perhaps did so intending to aid law enforcement in protecting the public from the danger of a firearm in the hands of someone who had consumed alcohol, his action was not government action.

However, assuming his actions of entering the automobile and seizing the firearm were government actions, defendant's rights under the Fourth Amendment were not violated.  Government agents may conduct a warrantless search and seizure under exigent circumstances, such as to protect the public safety.  <u>Warden v. Hayden</u>, 387 U.S. 294, 298-99 (1967); <u>United States v. Gwinn</u>, 219 F.3d 326, 331 (4th Cir. 2000)(exigent circumstances existed where drunk person was brandishing a firearm and threatening to kill).  In this case, Harrington reasonably believed the presence of a firearm (both on the driver's seat of the automobile and potentially on defendant's person) presented a risk of danger to the public that was enhanced by defendant's apparently having consumed alcohol.

After Harrington told Trooper Coon what he had seen and done, the trooper lawfully took control of the firearm without a warrant, because she had reason to believe that the firearm had been concealed on the driver's seat under defendant's person when Harrington first looked in on defendant's well-being after the accident.  Such concealment was a violation of Missouri law. Rev.

---

[5]Other considerations, not relevant in this case, are whether the subject acted at the request of the government or whether the government had offered a reward for the subject's conduct. <u>Malbrough</u>, 922 F.2d at 462.

Stat. Mo. § 571.030.1(1);[6] State v. Conley, 217 S.W. 29 (Mo. 1919). Trooper Coon verified Harrington's information with witness Mergo. Thus, she had probable cause to arrest defendant without a warrant. Beck v. Ohio, 379 U.S. 89, 91 (1964).

Defendant argues that he did not commit the crime of unlawful use of a weapon, because of the "peaceable traveler's exemption," which provides that § 571.030.1(1) does not apply when the subject is traveling in a continuous journey peaceably through the state. Rev. Stat. Mo. § 571.030.3 (2004 Cum. Supp.)("[Subdivision] (1) . . . [does] not apply when the actor . . . is traveling in a continuous journey peaceably through this state"); State v. Purlee, 839 S.W.2d 584, 592 (Mo. 1992)(en banc); State v. O'Toole, 83 S.W.3d 622, 627 (Mo. App. 2002).

Whether or not defendant was entitled to the peaceable traveler's exemption under Missouri state law at the time of his arrest was not an impediment to his warrantless arrest under the Fourth Amendment. Under Missouri law, "[o]nce a defendant raises the defense that he or she is within the exemption, the State has the burden of proving the defendant is not within the exemption." O'Toole, 83 S.W.3d at 627. However, "the traveler's exemption does not extend to persons traveling through this state during the commission of a felony." Purlee, 839 S.W.2d at 592. It was enough for a reasonable person in Trooper Coon's situation to learn Harrington's information, corroborated by the passer-by witness, to be persuaded that the crime of unlawful use of a weapon had been committed. Ultimately, the facts indicated that defendant would not have been able to assert the peaceable traveler's exemption under Missouri law, because his possession of the firearm was then a federal felony offense.

---

[6]This crime is committed if the subject knowingly carries a firearm, concealed from ordinary observation, readily capable of lethal use, and readily accessible to the subject. Mo. Approved Instructions--Criminal (Third ed.) § 331.20.

## Defendant's statements

The statement made by defendant before Trooper Coon formally arrested him and before he was advised of his rights, i.e., that he was from Florida, should not be suppressed. Even though the statement was made before he had been advised of his constitutional rights to remain silent and to counsel, it merely provided routine traffic accident report information. In investigating a traffic matter, the officer may lawfully check the driver's license and registration, and ask the driver about his origin, destination, and purpose for travel. United States v. Bloomfield, 40 F.3d 910, 915 (8th Cir. 1994) (en banc).

The statements made by defendant after Trooper Coon formally placed him under arrest should not be suppressed. These statements were made in the police car, as Trooper Coon drove defendant to the Perry County Sheriff's Office. Before he made these statements, defendant was advised of his constitutional rights to remain silent and to counsel, as prescribed by Miranda. By making his statements under the totality of the circumstances, defendant waived his Miranda rights. North Carolina v. Butler, 441 U.S. 369, 373, 375-76 (1979).

All of defendant's statements, before and after his arrest, were voluntary, because they were not the result of overreaching, such as coercion, deception, or intimidation; his will was not overborne and his ability to decide not to cooperate was not impaired. Colorado v. Connelly, 479 U.S. 157, 169-70 (1986); United States v. Jordan, 150 F.3d 895, 898 (8th Cir. 1998), cert. denied, 526 U.S. 1010 (1999).

Any item seized from the Chevrolet after defendant's arrest by Trooper Coon should not be suppressed, because it was seized incident to his lawful arrest. New York v. Belton, 453 U.S. 454, 461 (1981); United States v. Robinson, 414 U.S. 218, 235 (1973).

Whereupon,

**IT IS HEREBY RECOMMENDED** that the motion of defendant Valentine to suppress physical evidence and statements (Doc. 26) be denied.

The parties are advised they have ten days in which to file written objections to this Report and Recommendation. The failure to file timely written objections will waive the right to appeal issues of fact.

### NOTICE TO SET CASE FOR TRIAL

This Report and Recommendation having been issued by the undersigned United States Magistrate Judge,

**IT IS HEREBY ORDERED** that, pursuant to the Administrative Order of this Court, the case be set for trial.

/s/ David D. Noce
**DAVID D. NOCE**
**UNITED STATES MAGISTRATE JUDGE**

Signed this day, April 25, 2005.